UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                               Case No. 3:23-cr-147-MMH-JBT

SCHYULAR QUINTON WILLIS.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

"The tradition of passing trauma
from generation to generation
like a family heirloom
stops with you
its final inheritor
determined to lay it to rest"

— Zara Bas, *This Time You Save Yourself*

**Mr. Willis' History and Characteristics**

Schyular Willis had a very non-traditional upbringing. When he was born, his mother was married to a man that was not his biological father. His biological father, Jason Willis, was an active member of the United States Army stationed in California. Jason Willis gained permanently physical custody of Schyular when he was just a baby after a contentious custody battle with his mother. Partially because Schyular's mother, Carol a.k.a. Michelle Wiley/ Cantrell, already had other two other children and her marriage was failing, she relinquished all custody of Schyular to his father

when he was one.[1]

Schyular Willis has no early memories with his mother and would say that he "never felt a mother's love".[2] He did have the opportunity to meet her and his half- siblings when he was a teenager and has recently reconnected with her.



---

[1] See, Exhibit A Letter from Schyular's Mother C. Michelle Cantrell
[2] Dr. Anderton's Report attached to PSR- Page 2

Schyular Willis describes feelings of emotional detachment due to the absence of his mother in his life. Mr. Willis' mother is black, and his father is white. He identifies as a mixed-race person, but he was raised in an all- white household. Additionally, his father was often deployed in his early childhood, so he was raised primarily by his grandmother, Maggie Kroboth and his aunt Hannah during the periods of his father's deployment. Their family lived in the town of Sebastian, Florida located in Indian River County. During his father's deployments, it was very common for other extended family members to live in the home with Schyular and his grandmother, despite it only having two bedrooms and two bathrooms.

Schyular Willis has an extremely large extended family on his father's side with many aunts, uncles, and cousins. It appears that many of these relatives hover around the poverty line, have unstable housing situations, and come to depend on Mr. Willis and his father for housing sporadically. They also have a wide array of pets in the home including cats, ferrets, and a pot-bellied pig.

3






As a child, Mr. Willis had difficulty in school and had to repeat the second grade due to maladjustment from his father's deployments. He also describes feeling as though something was "wrong with him" and that he "could not fit in". His father had traditional attitudes of masculinity and toughness one might expect from a military upbringing and culture. He

---

[3] Pictures provided by Government Agents during their investigation of 826 Dolores St. Sebastian Florida, where Schyular grew up.

wanted Mr. Willis to be able to join the military as he had and was skeptical of doctors' and teachers' concerns regarding his son. As a result, Schyular Willis was never tested or treated for suspected learning or behavioral issues.

Due to the situation surrounding this case, counsel had the opportunity to have Mr. Willis evaluated. Dr. Anderton's report confirmed Mr. Willis' own suspicions that there was in fact something going on with his mental health. Mr. Willis presents with Autism Spectrum Disorder, Severe Depression, and Insomnia, none of which have been treated before this case. He is likely to be socially isolated with poor judgment and has few interpersonal relationships that could be described as close and warm. He has limited social skills, with particular difficulty interpreting the normal nuances of interpersonal behavior.

Of additional concern are the responses of Jason Willis and Ms. Kroboth to the instant conduct that brings Schyular Willis before the court. Both Jason Willis and Ms. Kroboth place blame on Minor Victim 1 (MV1) and her mother for the situation that transpired.[4] While it is clear that MV1 has been the victim of systemic sexual abuse, Schyular Willis does not attribute

---

[4] Letters are attached as Exhibit B. The purpose of these letters is to give the court context and insight into the thought patterns of the people who raised Mr. Willis, and do not represent the position of counsel or Schyular Willis.

5

any of the blame in this situation to MV1 or her parents, but fully accepts responsibility for his own actions. Being raised by two people with the values and belief systems described in these letters played a significant role in Mr. Willis' emotional development. Of additional concern, are allegations against Jason Willis that are strikingly similar to Schyular Willis' case, including alleged inappropriate text messages and a sexual relationship with an underage girl.[5] While Jason Willis was eventually acquitted of the lewd and lascivious conduct, this experience undoubtedly shaped the way he raised his son.


[6]

In addition to the uniquely chaotic living situation that Mr. Willis grew up in, it was also normalized for people in his family to have intimate

---

[5] *Former Sebastian Umpire Arrested on Sex Charges.* VERO NEWS.COM (JULY 29, 2010), https://veronews.com/2010/07/29/former-sebastian-umpire-arrested-on-sex-charges/
[6] Photograph of Schyular Willis and his father Jason Willis.

relationships with their extended cousins. For example, MV 1's parents are cousins once removed.[7] As is described in the letter from Jason Willis, he is both the uncle of MV1's mother and the first cousin of MV1's father. While this custom may be regarded as abnormal in some communities, it is legal in the state of Florida for first cousins to marry.[8]

## Nature and Circumstances of Current Case

Mr. Willis was 23 years old when this crime was committed. He was an active-duty marine with Alpha Battery, 3d Low Altitude Air Defense Battalion, when he developed a long-distance sexual relationship with a cousin, who was 13 years old. He asked her to create videos of herself in sexually explicit positions and actions, and she complied with his requests. He had disturbing messages with her that expressed desires of their future conduct together. The messages were discovered when MV1's parents went through her cell phone. Even after Mr. Willis was made aware that MV 1's parents knew of the messages, he continued communicating with her in an inappropriate manner.

---

[7] A condensed version of Schyular Willis' Family Tree is attached as Exhibit C.
[8] Florida Statute §741.21

 
[9]

Upon questioning from NCIS, Mr. Willis admitted his inappropriate conduct and confessed to sending the messages, which also caused his separation from the United States Marine Corps. It is difficult to explain what was going through his mind or what he hoped to gain from this inappropriate relationship with MV 1. He clearly didn't think of the potential lifetime of legal consequences of sex offender registration, which is not abnormal for someone his age.

Brain research has consistently shown the front of the brain, the prefrontal cortex, is one of the last areas of the brain to develop and is not fully developed until a person is in their mid-20s. It is the part of the brain

---

[9] Photographs of Schyular Willis and Family at Bootcamp Graduation.

responsible for, among other things, controlling impulses and anticipating consequences. As the American Medical Association and the American Academy of Child and Adolescent Psychiatry told the United States Supreme Court, "The adolescent's mind works differently from ours. Parents know it. This Court has said it. Legislatures all over the world have presumed it for decades or more. … Scientists have found that adolescents as a group, even at later stages of adolescence, are more likely than adults to engage in risky, impulsive, and sensation-seeking behavior."

The Supreme Court has consistently found this research instructive in its landmark rulings in *Roper vs. Simmons*, 543 U.S. 551 (2005), rendering unconstitutional the death penalty for juveniles; *Graham vs. Florida*, 560 U.S. 48 (2010), holding that it is unconstitutional to impose life without parole sentences on juveniles in non-homicides; and *Miller vs. Alabama*, 567 U.S. 460 (2012), holding that mandatory life-without-parole sentences for juveniles are unconstitutional in all cases. As Justice Anthony Kennedy wrote in *Roper* and reiterated in *Graham*, "As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well

9

formed." *Graham*, at 68 (citing Roper, at 569-570). This, he wrote in *Graham*, "often results in impetuous and ill-considered actions and decisions." *Graham*, at 72.

 Mr. Willis is facing the possibility of life imprisonment (a death in prison sentence) and while he is not quite a juvenile, he is still very young today, and was very young at the time of this offense. This research helps to explain why someone who received glowing letters for this sentencing hearing from employers, friends, and colleagues, could have engaged in such disgusting and inappropriate behavior.[10] His crime was impetuous, impulsive, immature, lacking self-control, and irrespective of the lifelong consequences of his conduct.

 It is widely understood and problematic that individuals with autism spectrum disorder (ASD) see the concrete and do not grasp or "appreciate [the] unwritten rules of social engagement."[11] "Everything that is not explicit, everything that is unstructured, everything that is not defined and expressly supported, is a difficulty for individuals with Asperger's Syndrome."[12] Their

---

[10] Letters in Support of Mr. Willis Attached as Exhibit D
[11] Mesibov, G., Shea, V., & Adams, L. (2001). *Understanding Asperger Syndrome and High Functioning Autism*. In Mesibov, G. (ed.) THE AUTISM SPECTRUM DISORDERS LIBRARY, Vol. 1. (2001).
[12] *Id.*

10

behavior may appear "inappropriate or embarrassing when, in addition to failing to use these social niceties, they violate clear social conventions" which oftentimes results from an unawareness of other people's feelings or point of view.[13] Lack of awareness of social norms and taboos, which figures into both domains of the diagnostic criteria for ASD, arises directly and inevitably from the absence of social intuition and its antecedent, "social visual engagement," with its neurodevelopmental underpinnings.[14] Social competence, including awareness of social norms, is simply a part of social intuition.

## General and Specific Deterrence

One of the primary purposes of sentencing is to promote specific deterrence for the individual and general deterrence for other potential offenders. As a society, we generally have two assumptions when it comes to people that view sexual images of underage children: first, that they are aware of the social rules related to viewing the images and how that behavior is viewed by others; and second, by viewing such images, they are aware of the social implications of the actions depicted and the effect it has on the

---

[13] *Id.*
[14] Venter, A., Lord, C., Schopler, E. (1992). *A follow-up study of high-functioning autistic children.* JOURNAL OF CHILD PSYCHOLOGY & PSYCHIATRY & ALLIED DISCIPLINES, 33(3), (1992). 489- 507

children being exploited. These assumptions simply do not hold true for those with autism in the face of autism research and clinical experience. While it may be obvious for someone with a neurotypical brain that Schyular Willis' conduct in this case was a clear violation of societal norms, inappropriate, and embarrassing, it simply did not register in the same way for Schyular. It is why this case is inappropriate for either general or specific deterrence purposes.

Many criminal offenses, especially sexual offenses, codify social norms, sociosexual rules and cultural taboos that are not explicitly taught but are presumed to be understood. These offenses, like Schyular Willis', are in a category of crimes for which lack of knowledge of wrongdoing is not a legal defense. However, the rules embedded in these crimes are neither appreciated, nor understood well enough, by many persons with ASD. They may be intelligent, but nevertheless "markedly impaired" in grasping "norms for social interaction" "in their cultural context."[15] This is a defining feature of autism. This deficit directly impairs the ability to intuit implicit social norms.[16] This goes directly to the question of moral culpability, and it cannot be brushed

---

15 American Psychiatric Association. (2013). *Diagnostic and statistical manual of mental disorders* (5th ed.) DSM-5. Pg 50-59.
16 *Id.*

12

aside in a system of law whose validity and integrity rests on the concept of blameworthiness.

The good news is that after young adulthood, people with high functioning ASD, generally, can adapt to the expectations of society with appropriate intervention.

> Adolescence and young adulthood appear to form the most difficult period in the lives of high-functioning individuals with autism spectrum disorders (ASD; Tantam, 2003). The challenges often faced by those without intellectual disabilities appear to result from the demands of social relationships, academics, employment, and independent living in those with ASD, which may exacerbate core ASD deficits or co-occurring conditions (Barnhill, 2007; Howlin, 2000). The features of these developmental periods, combined with the general challenges with transitions in this population, may explain why the reduction in ASD symptoms that individuals experience throughout life (Seltzer et al., 2003) tend to slow in the transition to adulthood (Taylor & Lounds, 2010).[17]

Very explicit sex education is needed for individuals with ASD. Such education should be concrete and literal, with an emphasis on behavioral rather than cognitive interventions. [18] The consensus of clinicians in this area

---

[17] Steven K. Kapp, Alexander Gantman and Elizabeth A. Laugeson, *Transition to Adulthood for High-Functioning Individuals with Autism Spectrum Disorders*. UCLA SEMEL INSTITUTE FOR NEUROSCIENCE AND HUMAN BEHAVIOR.
[18] Bolton, W. (2006) *Developmental Theory and Developmental Deficits: The Treatment of Sex Offenders with Asperger's Syndrome*, Ch2 in Hiller, J., Woods, H.,

is that what individuals with ASD who have sexually offended need is sociosexual information and communication skills. This supports the understanding that the condition being addressed is not one rooted in deviance or sociopathy.[19] The cure is telling us something about the condition. These methods of treatment are successful because they give these individuals an ability that make up for what they missed due to their neurologically based social learning deficits. In Mr. Willis' case, he will have the opportunity to be explicitly taught the appropriate sexual norms and communications through treatment that he did not receive as an adolescent.

The mandatory minimum sentence is sufficient, but not greater than necessary to achieve the sentencing goals of 3553(a).

## Promoting Respect for the Law, Protecting the Public, and Just Punishment

Mr. Willis is keenly aware of the gravity of his conduct. He has lost his military career and will spend, at least, the next decade of his life in prison because of it. After a decade in prison, he will spend at least the next 5 years on supervised release with sex offender conditions. He will have to register

---

Bolton W., SEX, MIND, AND EMOTION. Routledge, New York.
19 Mark H. Mahoney *Defending Autistic People: Sex Offenses* December 3-4, 2020.

and re-register as a sex offender in any state that he lives in. He will be prevented from accessing the internet for a very extended period. While on sex offender probation, his career prospects will be extremely limited. It will be more difficult for him to find housing due to residency restrictions, find and keep employment, and have custody of any children he may have. He will have a lifetime of decreased privacy and will be subjected to bias, prejudice, and intolerance from others in the community. Even the mandatory minimums in this case, give great deference to the rule of law and protect the public from future crimes of Mr. Willis.

## **Guidelines**

The Probation Office has calculated the Sentencing Guidelines in this case as 360 months to life in prison. This is true even though Schyular Willis has no prior criminal history, and even without him being charged with touching MV1. While these guidelines may be appropriate for a neurotypical, adult who purposely preyed on children for purely sexually sadistic purposes, they are far too severe for a case like Mr. Willis'.

In reviewing the Sentencing Guidelines applicable to this case, this Court can look to §5K2.13, § 5H1.3, and § 5H1.1 for guidance in granting Mr. Willis' request for a variance. §5K2.13 provides for a downward

15

departure if 1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and 2) the reduced mental capacity contributed substantially to the commission of the offense. Mr. Willis' undiagnosed ASD played a significant role in the commission of this offense, and the effect that ASD had on his culpability to fully comprehend the situation at hand.

§ 5H1.3 also is illustrative. §5H1.3 suggests that if an individual's mental or emotional condition distinguishes this case from the typical case covered by the guidelines and/or in certain cases if a downward departure may be appropriate to accomplish a specific treatment purpose, then §5H1.3 may apply. In Mr. Willis' case, the offense was not caused by depraved indifference or malice but by neuroatypical brain development and poor social intuition skills.

Furthermore, newly adopted Amendment to §5H1.1 notes that age can be relevant in determining if a departure is warranted.

> "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful

16

individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation."

Schyular Willis will turn 24 years old less than a week after he is sentenced. He has his entire life ahead of him. With the newfound knowledge of his condition and supportive treatment options, he can redeem himself to be a productive and law-abiding member of society if this court gives him the opportunity.

## Conclusion

At the sentencing hearing, Mr. Willis will further articulate reasons for his request for a sentence of 10 years in prison followed by 5 years of supervised release, and why that sentence that is sufficient, but not greater than necessary, to comply with the § 3553(a) factors.

                                        Respectfully submitted,

                                        A. FITZGERALD HALL
                                        FEDERAL DEFENDER, MDFL
                                        */s/Kathryn Sheldon, Esq.*
                                        Kathryn E. Sheldon, Esq.
                                        Assistant Federal Defender
                                        Florida Bar No. 1019538
                                        200 W. Forsyth St, Ste. 1240
                                        Jacksonville, Florida 32202
                                        E-Mail: Kathryn_sheldon@fd.org
                                        Counsel for the Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 20204, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Kathryn Sheldon*
Assistant Federal Defender
